UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA YVONNE LUCAS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-02184 JAM CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that she had excess resources for the period from January 2011 through June 2015 under Section 416.1201(a) of the Social Security Act ("Act"). The ALJ determined that the payment plaintiff received in the settlement of a civil lawsuit was a "resource" for the purposes of Supplemental Security Income ("SSI") eligibility. For the reasons discussed below, the undersigned will recommend that plaintiff's motions for summary judgment and remand be denied, and the Commissioner's cross-motion for summary judgment be granted.

////
////
////
////

1

BACKGROUND

Plaintiff began receiving supplemental security income benefits based on an application filed in September 1997.[1] Administrative Transcript ("AT") 16.[2]

Plaintiff's son, David Lucas, was born in 1968 and, as a young man, excelled at science and worked as a chef. However, in 1994, his vision began to worsen due to multiple sclerosis (MS) and, by 2000, he was blind. (ECF No. 30 at 7-8.) In 2007, Mr. Lucas was placed under a conservatorship and housed in a state-run hospital due to mental and physical health issues. (ECF No. 13-3 at 26; ECF No. 25-2 at 27.) On October 14, 2008, he suffered death by hanging, using an unsecured electrical cord. (ECF No. 25-1 at 3.)

In January 2011, plaintiff received a settlement payment related to a wrongful death suit she filed on behalf of her son. (ECF No. 25-1 at 1; AT 27.) Plaintiff received a settlement check for $186,890.58. (AT 85.) On February 7, 2011, plaintiff reported to the Social Security Administration that, on January 21, 2011, she "received money in an amount that, according to law, makes me ineligible to receive SSI benefits." (AT 16, 48.)

Plaintiff stopped receiving SSI benefits. Moreover, in February 2011, the agency informed her that she had received an overpayment of $1,250.06 between January 1, 2011 and February 1, 2011, and was required to pay it back. (AT 50-53.) Plaintiff requested reconsideration of the determination, stating that no one had told her when she signed the settlement agreement that she would stop receiving SSI benefits. (AT 56-57.)

On January 21, 2016, an ALJ held a hearing on plaintiff's case. Plaintiff testified at the hearing that she did not receive SSI benefits for a 54-month period between January 2011 and July 2015. She argued that she was entitled to retroactive payment of those benefits in the amount of $33,751.62. AT 34-35. The ALJ framed the issue as follows:

> The general issue before the ALJ is whether the claimant met the nondisability eligibility requirements for [SSI] for the period of

---

[1] Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.

[2] Record citations refer to page numbers assigned by the court's ECF docketing system.

2

January 2011 through June 2015. The specific issue is whether the claimant had resources in excess of the amount permitted under Title XVI during the period(s).

A related issue is whether the claimant was overpaid benefits within the meaning of Section 2014 of the Social Security Act and, if so, whether recovery of the overpayment may be waived. In determining whether an overpayment will be waived, it must be decided whether the claimant was 'without fault' as defined in 20 CFR § 416.552 in causing the overpayment[.]

AT 15.

After recounting the evidence and testimony, the ALJ concluded that plaintiff "did have excess resources during the period at issue," as her possession of a six-figure cash settlement "in and of itself qualifies as excess resources." AT 17. The ALJ explained:

> Section 416.1201(a) of the Social Security Administration regulations No. 16, as pertinent herein, defines resources as cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority, or power to liquidate the property, or his (or her) share of the property, it is considered a resource. If a property cannot be liquidated, the property will not be considered a resource of the individual (or spouse).
>
> In the instant case, it is undisputed that the claimant had funds over $2,000 during the period at issue. The record shows the claimant received cash in January 2011, from a $375,000 compromise settlement. [Record citation.] As such, the cash falls directly under Section 416.1201(a) as "cash . . . that an individual owns . . . (.)"
>
> The sole dispute is whether the cash should be considered a resource for the purposes of supplemental security income eligibility. In response, the undersigned emphasizes the definition of 'resources' is detailed in Social Security regulations. There is no exclusion for receipt of a compromise settlement. As such, clear construction of the law indicates the claimant's resultant cash is considered a resource.

AT 17.

The ALJ made the following findings:

1. The claimant did have excess resources for the period from January 2011 through June 2015.

2. The claimant was overpaid for periods from January 2011, since she had excess resources.

3

3. The claimant was without fault in causing or accepting the overpayment; however, recovery did not defeat the purpose of the Act and was not against equity and good conscience.

4. The request for waiver of the recovery of the overpayment is denied.

5. The claimant provided insufficient evidence to establish that she was underpaid during the period(s) at issue.

AT 17-18.

ISSUES PRESENTED

Plaintiff argues that the ALJ incorrectly determined that the payment she received in the settlement of a civil lawsuit was a "resource" for the purpose of SSI eligibility.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

"The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or older, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. In order to be eligible for SSI, a person must be elderly, blind, or disabled, and also the person's "income and resources" must be below a specified level. See 42 U.S.C. § 1382(a); Cervantez v Sullivan, 963 F.2d 229, 231 (9th Cir. 1992). Since January 1989, the resource limit has been $2,000 for an unmarried individual. 42 U.S.C. § 1382(a)(3)(B). See Kubetin v. Astrue, 637 F. Supp. 2d 59, 62 (D. Mass. 2009).

Agency regulations define "resources" as "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). The statute allows "for the exclusion of certain items in calculating a person's resource level. For example, the term 'resources' does not include a home, household goods, and personal effects, so long as their value does not exceed the amount set as reasonable by the SSA Commissioner." White ex rel. Smith v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999), citing 42 U.S.C. §§ 1382(b)(a)(1) and (a)(2)(A). Money received as a settlement for a wrongful death action or other lawsuit is not among the exclusions set forth by Congress or the agency. See Blausey v. United States Trustee, 552 F.3d 1124, 1133 (9th Cir. 2009) ("The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded.").

In Frerks v. Shalala, 52 F.3d 412, 414 (2d Cir. 1995), the Second Circuit upheld a ruling that plaintiff's settlement proceeds from a medical malpractice suit were available resources for purposes of SSI eligibility, as the funds could be "released and used for his support and

maintenance as the need arises. We therefore find that the ALJ's determination that Frerks had resources in excess of the statutory limits to be supported by substantial evidence." Similarly, in Hunt v. Astrue, 581 F. Supp. 2d 238, 242 (D. Mass. 2008), the district court concluded that money from a medical malpractice settlement and put into a trust for the disabled claimant counted as a resource for SSI purposes, "because the trust is revocable" and the money could be converted to "be used for [the claimant's] support or maintenance."

In light of the statutes, agency regulations, and caselaw set forth above, the ALJ's finding that plaintiff's settlement payment constituted a "resource" for purposes of SSI eligibility was supported by substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 25) be denied;

2. Plaintiff's motion to remand (ECF No. 27) be denied;

3. The Commissioner's cross-motion for summary judgment (ECF No. 28) be granted; and

4. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 10, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/lucas2184.ssi.ckd_f&rs

6